IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STACEY D. R.,[1]
     Plaintiff,

               v.                           Civil No. 3:20-cv-00858 (MHL)

KILOLO KIJAKAZI,[2]
Commissioner of Social Security,
     Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under the Social Security Act (the "Act").

Plaintiff, forty-six years old at the time of her benefits application, has completed one year of college and last worked as a sales associate. (R. at 50, 186-87.) Plaintiff suffers from vertigo, sarcoidosis, high cholesterol, high blood pressure/hypertension, diabetes, gastroenteritis, and neuropathy. (R. at 185.)

On January 9, 2020, an Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act. (R. at 18.) After exhausting her administrative remedies, Plaintiff now seeks review of the ALJ's decision. On August 9, 2021, Plaintiff filed a letter and medical records with the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

court. Since Plaintiff is proceeding pro se, she is entitled to a liberal reading of her pleadings. *Jacobi v. Blocker*, 153 F.R.D. 84, 86 (E.D. Va. 1994). Therefore, the Court construes Plaintiff's filing (ECF No. 24) as a Motion for Summary Judgment seeking reversal of the Commissioner's decision. To that end, the Court will address whether substantial evidence supports the Commissioner's decision and whether the ALJ applied the correct legal standards in reaching his decision.

This matter comes before the Court pursuant to 28 U.S.C. § 636(c)(1) on cross motions for summary judgment, which are now ripe for review.[3] Having reviewed the parties' submissions and the entire record in this case, and for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 24) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED; and the final decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

On July 11, 2018, Plaintiff filed an application for disability insurance benefits alleging disability beginning September 21, 2017. (R. at 278-79.) The Social Security Administration ("SSA") initially denied this claim on August 4, 2018, (R. at 50-71) and again upon reconsideration on December 7, 2018. (R. at 72-84.) At Plaintiff's written request, the ALJ held a hearing on November 19, 2019, at which a vocational expert and Plaintiff testified. (R. at 29-48, 125.) On

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

January 9, 2020, the ALJ issued a written opinion holding that Plaintiff was not disabled from the alleged onset date through the date of the ALJ's decision. (R. at 18.) Plaintiff petitioned the SSA Appeals Council to review the decision. (R. at 5.)

On August 12, 2020, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-5.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court

3

must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the

4

Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III.  THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 21, 2017, the alleged onset date, through the date of the ALJ's opinion.[4] (R. at 11.) At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: (1) sarcoidosis; (2) chronic infections of the skin; and (3) diabetes mellitus. (R. at 12.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.)

The ALJ then assessed Plaintiff's residual functional capacity.[5] (R. at 14-16.) The ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20

---

[4] "Substantial gainful activity" is work that is both substantial and gainful as defined by the Agency in the C.F.R.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Work may be substantial even if it is done on a part-time basis or if an individual does less, gets paid less, or has less responsibility than when the individual worked before. 20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

[5] "Residual functional capacity" is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR-96-8p.  When assessing residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, eight hours a day, five days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  *Id.*  (footnote omitted).

CFR 404.1567(c) and 416.967(e), with the exception that Plaintiff could: (1) lift and carry twenty-five pounds frequently and fifty pounds occasionally; (2) sit, stand, and walk about six hours in an eight- hour day; (3) constantly push or pull at a medium level of exertion; and (4) occasionally be exposed to unprotected heights, moving mechanical parts, pulmonary irritants, extreme cold or heat. (R. at 14.) The ALJ also found that Plaintiff was capable of crawling, stooping, and climbing ramps and stairs frequently. (R. at 14.)

Based on this determination, the ALJ considered at step four of the analysis whether Plaintiff could perform her past relevant work as a retail sales worker, store manager, and security, at least in the manner in which such work is generally performed.[6] (R. at 16.) The conclusion was based on the testimony of Plaintiff and a vocational expert during the hearing, and the ALJ's review of the record. (R. at 16-17.) The ALJ found that Plaintiff could perform her past work because that job does not require work-related activities that are incompatible with her residual functional capacity. (R. at 17.) The ALJ proceeded to step five even though that part of the analysis was not required if, at step four, the ALJ determined that Plaintiff could perform past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). At step five, the ALJ determined there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 17.) Considering her age, education, work experience, and residual functional capacity, the ALJ found Plaintiff could perform jobs such as a hand packager, office helper, and addresser. (R. at 17-18.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 18.)

_____

[6] "Past relevant work" is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

## IV.  ANALYSIS

In the letter filed by Plaintiff (ECF No. 24), she requests that this Court reconsider her application for disability benefits. Since Plaintiff is proceeding pro se, she is entitled to a liberal reading of her pleadings. *Jacobi v. Blocker*, 153 F.R.D. 84, 86 (E.D. Va. 1994). Therefore, the Court will address whether substantial evidence supports the Commissioner's decision and whether the ALJ employed the correct legal standards in reaching his decision.

### A.  The Court Cannot Consider the Evidence Plaintiff Submitted That Was Not Presented to the ALJ.

As an initial matter when determining whether substantial evidence supports an ALJ's decision, a court cannot consider evidence that is not within the administrative record.  *Smith v. Chater*, 99 F.3d 635, 638 n. 5 (4th Cir. 1996) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714–15 (1963)); *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972) (citing *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1970)) (noting that reviewing courts are restricted to the administrative record in determining whether substantial evidence supports the decision). To the extent Plaintiff has submitted records that are not part of the administrative record, the Court cannot consider those records at this time.

### B.  Substantial Evidence Supports the ALJ's Step One Determination.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 21, 2017, the alleged onset date, through the date of the ALJ's opinion. (R. at 11.) In making this determination, an ALJ must determine whether a claimant was working at the time of the application and if that work constituted substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iv), (b) & 416.920(a)(4)(iv), (b). If the work constituted substantial gainful activity, the analysis ends and an ALJ must find claimant "not disabled," regardless of any medical

condition. §§ 404.1520(b), 416.920(b). Regulations define substantial gainful activity as work activity that is both substantial and gainful. §§ 404.1572, 416.972. Substantial work "involves doing significant physical or mental activities" and "may be substantial even if it is done on a part-time basis." §§ 404.1572(a), 416.972(a). Gainful work is work done for "pay or profit, whether or not a profit is realized." §§ 404.1572(b), 416.972(b). Generally, gross earnings constitute substantial gainful activity if those earnings are above a certain figure specified in the regulations. §§ 404.1574(a)(l), (b) & 416.974(a)(1), (b). For calendar year 2017, the specified, average monthly amounts to constitute substantial gainful activity were $1,170. Program Operations Manual System DI 10501.015 tbl. 2. The regulations further require that where an individual works and "there has been no change in the substantial gainful activity earnings levels, [the Agency] will average [the individual's] earnings over the entire period," but if the individual works "over a period of time during which the substantial gainful activity earnings levels change, [the Agency] will average [the individual's] earnings separately for each period in which a different substantial gainful activity earnings level applies." §§ 404.l574a(a)-(b), 416.974a(a)-(b).

Plaintiff earned $3,454.10 in 2018, and $25,883.16 in 2017. (R. at 166.) In 2017, Plaintiff earned $6,905, $5,361, $7078, and $488 per quarter. (R. at 165.) Quarter three exceeded the average monthly amount to constitute substantial gainful activity for that year. However, quarter four was below the average amounts articulated in Program Operations Manual System DI 10501.015 tbl. 2. Thus, as the earning record did not demonstrate the earnings requisite for Plaintiff's activities to be considered engaged in substantial gainful activity since quarter three of 2017, substantial evidence supports the ALJ's determination that Plaintiff had not engaged in substantial gainful activity since September 21, 2017 (her alleged onset date).

### C. Substantial Evidence Supports the ALJ's Step Two Determination.

At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: (1) sarcoidosis; (2) chronic infections of the skin; (3) and diabetes mellitus. (R. at 12.) Further, the ALJ found that Plaintiff's hypertension and depression were non-severe. (R. at 12.) In making this determination, an ALJ must consider a claimant's medically determinable impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921. "The Supreme Court has held that this step of the disability evaluation is a *de minimis* threshold." *Williams v. Astrue*, 2010 WL 395631, at *14 (E.D. Va. Feb. 2, 2010), *report and recommendation adopted*, at *1 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)).

An ALJ satisfies step two by finding a severe impairment and proceeding through the rest of the sequential analysis. *McCormick v. Soc. Sec. Admin.*, *Comm'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.") A claimant has the burden of demonstrating that she has an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Bowen*, 482 U.S. at 146. The claimant's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909.

A severe impairment causes more than a minimal effect on one's ability to function. §§ 404.1520(c), 416.920(c). Likewise, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities." §§ 404.1522(a), 416.922(a). An ALJ will find a claimant not disabled at step two if she "do[es] not

have a severe medically determinable physical or mental impairment that meets the duration requirement . . . , or a combination of impairments that is severe and meets the duration requirement." §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

### 1. Substantial evidence supports the ALJ's finding that Plaintiff's hypertension was not severe.

The ALJ found that Plaintiff's hypertension was not severe, as it appeared to be controlled and it did not significantly limit Plaintiff's ability to perform basic work activities. (R. at 12.) Plaintiff's providers found her blood pressure was well controlled on medication. (R. at 388, 1102, 11.) Plaintiff was found to have normal neurological and cardiovascular status despite elevated blood pressure. (R. at 349, 353, *passim*.) Further, Plaintiff was found to not have an abnormal blood pressure at appointments (R. at 341, 346) and she denied symptoms relating to hypertension when meeting with her doctor. (R. at 739.) The record reflects that Plaintiff's hypertension was controlled or not significantly limiting her activities. As a result, substantial evidence supports the ALJ's determination that Plaintiff's hypertension was not severe.

### 2. Substantial evidence supports the ALJ's finding that Plaintiff's depression was not severe.

The ALJ found that Plaintiff's depression was likewise not severe. The ALJ reviewed the evidence regarding Plaintiff's depression and noted that she reported ongoing outside stressors. (R. at 12, 739, 743, 749, *passim*.) However, Plaintiff's mental status examinations yielded no abnormalities, no irritability, or abnormal ideations. (R. at 739, 743, *passim*.) The ALJ determined the record did not support more than mild limitations in Plaintiff's understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. at 12; see 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your

impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

This determination is supported by the notes of Plaintiff's providers. After a neurologic evaluation, Plaintiff was alert and oriented with no impairment of recent or remote memory and had a normal attention span and appropriate fund of knowledge. (R. at 356, 359, *passim*.) Further, Plaintiff reported that she had significant improvement with her depression since starting Effexor. (R. at 392.) Throughout the record, Plaintiff was not found to have more than mild limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (R. at 195, 356, 739.) As a result, substantial evidence supports the ALJ's determination that her depression was not severe.

**D. Substantial Evidence Supports the ALJ's Step Three Determination.**

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.) Specifically, the ALJ considered Listing 1.00 (musculoskeletal disorders), Listing 2.00 (visual disorders), Listing 4.00 (cardiovascular disorders), Listing 5.00 (gastrointestinal disorders), Listing 6.00 (genitourinary disorders), Listing 8.00 (skin disorders), Listing 11.00 (neurological disorders), and Listing 12.00 (mental disorders). After considering these listings, the ALJ found that Plaintiff's diabetes was not so uncontrolled that it affected these other body systems. (R. at 14.) Nevertheless, the ALJ considered the limiting effects of Plaintiff's diabetes as part of the residual functional capacity analysis. (R. at 14.)

Plaintiff bears the burden of proving that she meets or equals a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The listings "were designed to operate as a presumption of disability

11

that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof. *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530.

### *1. Substantial evidence supports the ALJ's finding that Plaintiff did not meet the requirements of Listing 8.05.*

Plaintiff's condition must satisfy all the enumerated criteria in Listing 8.05 to qualify her as disabled at step three. *Id.* Specifically, to meet the requirements of Listing 8.05, Plaintiff must have extensive skin lesions which "interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity;" lesions that occur "on the palms of both hands that very seriously limit your ability to do fine and gross motor movements;" and lesions occurring "on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 8.00.C.1. Here, the ALJ did not find documentation within the record that extensive lesions persisted for at least three months despite treatment. (R. at 13.)

This conclusion is supported by the record as the lesions, typically located on Plaintiff's head, did not interfere with her ability to move. (R. at 677). In addition, Plaintiff did not have extensive lesions. Plaintiff had lesions on her chin, head and back of neck treated by her doctors. (R. at 677, 716, 729.) Plaintiff reported that she had a lesion on her head and within three months after treatment her provider noted there was a crusted plaque with scarring and alopecia. (R. at 677, 697.) Plaintiff had a lesion on her chin that was resolved within a month. (R. at 697, 716.) Further, Plaintiff's lesions were treated, and her doctor found that the lesions responded well to

treatment even though Plaintiff asserted they were growing. (R. at 729.) Throughout 2018, Plaintiff was found not to have any new lesions, and there was no mention of old lesions. (R. at 491, 494, 756, 777, 780.) Therefore, there is substantial evidence within the record supporting the ALJ's determination that Plaintiff's lesions did not meet or medically equal a listing.

### 2. Substantial evidence supports the ALJ's finding that Plaintiff's diabetes alone or with Plaintiff's other impairments did not meet or medically equal the criteria of a Listing.

The ALJ also considered Plaintiff's diabetes in accordance with Social Security Ruling ("SSR") 14-2p, which provides guidance for the evaluation of diabetes mellitus in disability claims. (R. at 13-14 (citing SSR 14-2p, 2014 WL 2472008, at *1 (June 2, 2014)).) Diabetes alone is not a listed impairment for adults. Consistent with the regulations, the ALJ considered the effects of diabetes alone or with other impairments to determine if it would meet or medically equal the criteria of a listing. SSR 14-2p, 2014 WL 2472008, at *6. The ALJ discussed how diabetes and its symptoms could implicate various listings. (R. at 13-14.) However, the ALJ determined Plaintiff's diabetes did not cause such significant limitations that she met or medically equaled a listing as the evidence within the record did not support such a finding. (R. at 14.)

This determination is supported by the record as Plaintiff has not reported symptoms of her diabetes affecting other bodily systems. For example, there have been no reports Plaintiff suffered from seizures, loss of consciousness, or neuropathy that would rise to the levels articulated in Listings 11.00 and 12.00. (R. at 474, 480, 483, 494, *passim*.) Therefore, the ALJ did not err in his determination that Plaintiff's diabetes did not meet or medically equal a listing.

### E. Substantial Evidence Supports the ALJ's Determination of Plaintiff's Residual Functional Capacity.

After step three of the ALJ's sequential analysis, but before deciding whether Plaintiff could perform past relevant work, the ALJ determined Plaintiff's residual functional capacity. 20

13

C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.902(e)-(f), 416.945(a)(1).  The ALJ determined that:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can lift and carry 25 pounds frequently and 50 pounds occasionally. She can sit, stand, and walk for about six hours in an eight-hour day. The [Plaintiff] can constantly push or pull at the medium level of exertion. She can frequently climb stairs or ramps, balance, stoop, kneel, crouch, or crawl. The [Plaintiff] can never climb ladders, ropes, or scaffolds. She can occasionally be exposed to unprotected heights, moving mechanical parts, pulmonary irritants, extreme cold, or extreme heat.

(R. at 14.) In analyzing a claimant's abilities, an ALJ must first assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. §§ 404.1545(b), 416.945(b). Generally, the claimant is responsible for providing the evidence that an ALJ utilizes in making a residual functional capacity determination; however, before determining that a claimant is not disabled, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. §§ 404.1545(a)(3), 416.945(a)(3). The residual functional capacity determination must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that are based on a claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* §§ 404.1545(e), 416.945(e).

SSR 96-8p instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing SSR 96-8p). The residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each

14

conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

An ALJ's failure to conduct a function-by-function analysis does not necessarily result in automatic remand. The Fourth Circuit rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636.  Indeed, in light of *Mascio*, multiple district courts have found that in the absence of an explicit function-by-function analysis, the reviewing court must assess whether an ALJ's residual functional capacity analysis considered the relevant function, whether the decision provides a sufficient basis to review the ALJ's conclusions and, ultimately, whether that decision is supported by substantial evidence in the record. *Ashby v. Colvin*, 2015 WL 1481625, *3 (S.D.W.Va. March 31, 2015) (holding that the ALJ did not conduct an explicit function-by-function analysis of claimant's physical abilities, but sufficient evidence existed showing that the ALJ analyzed the relevant function); *see also Scruggs v. Colvin*, 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (requiring remand because the ALJ's decision did not address a claimant's ability to complete tasks for a full workday); *Carver v. Colvin*, 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) (recommending remand because the ALJ neglected to assess a claimant's ability to walk or stand for a full workday).

The ALJ considered all of Plaintiff's symptoms and the extent which they should reasonably be accepted as consistent with objective medical evidence. (R. at 14.) Further, the ALJ considered the medical opinions and prior administrative medical findings as required by 20 CFR 404.1520c and 416.920c. (R. at 14.)

First, the ALJ reviewed whether there was an underlying medically determinable physical or mental impairment or impairments that could reasonably be expected to produce the pain or symptoms Plaintiff was alleging. (R. at 14.) Then the ALJ evaluated the intensity, persistence, and

limiting effects of Plaintiff's symptoms to determine the impact on her ability to perform work-related activities. (R. at 12.)

The ALJ noted that Plaintiff claimed she had physical and mental impairments that were related to sarcoidosis, chronic infections of the skin, and diabetes mellitus. (R. at 14.) Plaintiff alleged she had difficulty: (1) lifting; (2) squatting; (3) bending; (4) standing; (5) reaching; (6) walking; (7) sitting; (8) kneeling; (9) climbing stairs; (10) remembering; (11) completing tasks; (12) concentrating; (13) understanding; (14) following instructions; and (15) using her hands. (R. at 15.) However, the ALJ found that Plaintiff's limitations were not to the level that Plaintiff alleged. (R. at 15.) For example, the ALJ noted that Plaintiff: (1) attended to her personal care needs; (2) prepared meals; (3) performed household duties; (4) drove a car; (5) shopped; and (6) took care of pets. (R. at 15.) Thus, the ALJ found that Plaintiff may have limits, but the objective findings did not support Plaintiff's allegations of an inability to do all work. (R. at 15.)

The ALJ considered the medical record and determined that while Plaintiff's skin lesions caused her pain, her doctors noted she: (1) was in no acute distress; (2) had a normal gait; (3) had a full range of motion; (4) had no tenderness; (5) had good motor strength in the extremities; (6) had no significant neurological deficits; and (7) had no need for an assistive device. (R. at 15.) Therefore, the ALJ found that the medical evidence within the record did not support Plaintiff's allegations. (R. at 16.) This is supported by the record as Plaintiff's doctors noted on their review of symptoms that Plaintiff was in no acute distress. Instead, doctors observed Plaintiff was alert, had a normal gait, and was without neurological or musculoskeletal issues. (R. at 266-67, 272, 346, 349, 353, 356, 359, 362, *passim*.)

16

**1. The ALJ properly reviewed opinion evidence when determining Plaintiff's residual functional capacity.**

The ALJ reviewed the medical opinions within the record in making his residual functional capacity determination. (R. at 16.) The ALJ found the opinion of Brandon Miller, M.D. ("Dr. Miller") to be unpersuasive as Plaintiff's physical examinations were benign and did not support Dr. Miller's opinion. (R. at 16, 1093-1144.) The ALJ found the opinion of Veronica Bedeau, M.D. ("Dr. Bedeau") to be mostly persuasive as the record supported the determination that Plaintiff could perform medium work. (R. at 15-16, 80-81.) However, the ALJ did find that Plaintiff's assertions of pain supported additional limitations and thus limited Plaintiff to occasional postural movements. (R. at 16.)

Under the SSA regulations, an ALJ must consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record."). The regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

17

> (iv) Your ability to adapt to environmental conditions, such
> as temperature extremes or fumes.

*Id*. §§ 404.1513(a)(2), 416.913(a)(2). A medical opinion does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. § 404.1513(a)(3) (defining these categories of information as "other medical evidence").

Under the regulations,[7] an ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1)–(5). Supportability and consistency are the "most important" factors, and an ALJ must discuss how he considered these factors in the written opinion. *Id*. § 416.920c(b)(2).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion []" will be. *Id*. § 416.920c(c)(2). Similarly, for consistency, "[t]he more consistent a medical opinion []" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[]" will be. *Id*. § 416.920c(c)(2).

Under the substantial evidence standard of review, "even if the allegedly contradictory evidence Plaintiff highlights could support a different result, the court's role is not to second-guess

---

[7] Because Plaintiff filed this disability claim after March 27, 2017, Section 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

18

the ALJ's findings." *Risner v. Comm'r Soc. Sec.*, No. 8:19-cv-00753, 2020 U.S. Dist. LEXIS 168482, at *28 (D.S.C. Apr. 20, 2020) (citing *Brown v. Colvin*, No. 5:15-0321, 2016 U.S. Dist. LEXIS 111237, at *6 (D.S.C. Aug. 22, 2016), *aff'd* 675 F. App'x 336 (4th Cir. 2017)).

An ALJ may explain his consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *See id.* § 416.920c(b)(3). In that situation, an ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *See id.*

### a. The ALJ properly weighed Dr. Miller's opinion.

On November 15, 2019, Dr. Miller filled out Medical Opinion Questionnaires. (R. at 1151-58.) Dr. Miller opined that Plaintiff: (1) could sit continuously for thirty minutes; (2) could stand continuously for fifteen minutes; (3) could stand and walk less than two hours in an eight hour workday; (4) could sit about two hours in an eight hour workday; (5) would need to shift positions at will; (6) would need to take three to four unscheduled fifteen minute breaks during an eight hour workday; (7) would need to elevate her legs with prolonged sitting; (8) could occasionally carry ten to twenty pounds; (8) had significant limitations in doing repetitive reaching, handling or fingering; and (9) could not have exposure to extreme temperatures, humidity, fumes, odors, dusts, gasses, smoke, and chemicals. (R. at 1151-53.) Dr. Miller also submitted a Medical Opinion Questionnaire regarding Plaintiff's mental impairments. (R. at 1154-58.) Dr. Miller opined that Plaintiff: (1) had depression and was stable; and (2) had fair mental abilities to be able to use public transportation. (R. at 1154) Further, Dr. Miller opined that Plaintiff had good to very good abilities in all other categories. (R. at 1154-56.)

The ALJ reviewed this opinion and found that it was not supported by Dr. Miller's own medical findings within the record. (R. at 16.) Further, the record indicated "fairly normal physical

health symptoms when compliant with medical management and monitoring." (R. at 16.) Therefore, the ALJ found that Dr. Miller's opinion was inconsistent with substantial evidence within the record. (R. at 16.) Throughout the record, doctors noted on their review of symptoms that Plaintiff: (1) was not in acute distress; (2) had a normal gait; and (3) was without neurological or musculoskeletal issues. (R. at 266-67, 272, 346, 349, 353, 356, 359, 362, *passim*.) Thus, the ALJ's determination that Dr. Miller's opinion was inconsistent with the record is supported by substantial evidence.

### b. The ALJ properly weighed Dr. Bedeau's opinion.

Dr. Bedeau opined that Plaintiff has exertional limitations. (R. at 80.) She stated Plaintiff could occasionally lift and/or carry fifty pounds and could frequently lift and/or carry twenty-five pounds in an eight-hour workday. (R. at 80.) Dr. Bedeau also opined that Plaintiff could sit a total of six hours in an eight-hour workday. (R. at 80.) Further, Plaintiff could stand and/or walk for six hours in an eight-hour workday. (R. at 80.) Dr. Bedeau opined that Plaintiff needed to avoid extreme temperatures and concentrated exposure to hazards and fumes. (R. at 80-81.) Dr. Bedeau supported her determinations by noting that Plaintiff's diabetes was poorly controlled, and Plaintiff had a normal gait. While Plaintiff asserted her doctor took her out of work, Dr. Bedeau's notes conflict with that assertion. (R. at 80-81.)

The ALJ addressed Dr. Bedeau's opinion when discussing the formulation of Plaintiff's residual functional capacity. (R. at 15.) The ALJ found Dr. Bedeau's opinion to be mostly persuasive. (R. at 15.) The ALJ noted that Dr. Bedeau's opinion was consistent with substantial evidence in the record. (R. at 15.) Further, Plaintiff's issues with diabetic symptoms appeared to be due to her noncompliance with her medication and doctors' orders. (R. at 15.) The ALJ noted that while the record supported medium type work due to Plaintiff's pain symptoms, sarcoidosis,

respiratory issues, arthritis and diabetes, the record warrants other postural and environmental limitations. (R. at 16.) Throughout the record, doctors noted that Plaintiff: (1) was not in acute distress; (2) had a normal gait; and (3) was without neurological or musculoskeletal issues. (R. at 266-67, 272, 346, 349, 353, 356, 359, 362, *passim*.) However, Plaintiff's testimony regarding her pain supported more limitations than set forth by Dr. Bedeau. (R. at 42.) Thus, substantial evidence reinforces the ALJ's determination that Dr. Bedeau's opinion was mostly supported by the record.

### F. Substantial Evidence Supports the ALJ's Step Four Determination.

At step four of the sequential analysis, an ALJ must assess the claimant's residual functional capacity and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  In assessing a claimant's ability to perform past relevant work, the Commissioner may rely on the general job categories of the *Dictionary of Occupational Titles* ("DOT") as presumptively descriptive of a claimant's prior work.  *See* SSR 82-61 ("The . . . DOT descriptions can be relied upon — for jobs that are listed in the DOT — to define the job as it is usually performed in the national economy."). Moreover, agency rulings specifically contemplate "that some individual jobs may require somewhat more or less exertion than the DOT description." *Id.*

Further, the regulations provide that an ALJ may use the services of a vocational expert or look to the DOT when determining the demands of Plaintiff's past relevant work and whether her residual functional capacity allows her to perform such work.  §§ 404.1560(b)(2), 416.960(b)(2) ("We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' ... to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").  Moreover, the test for evaluating a claimant's past relevant work experience is not whether she may perform

the heightened demands of her actual position, but the demands as generally required by employers throughout the economy. SSR 82-61. "[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" SSR 82-61.

Here, the ALJ considered whether Plaintiff could perform her past relevant work as a retail sales worker, store manager, and security, at least in the manner in which such work is generally performed. (R. at 16.) The conclusion was based on the testimony of Plaintiff and a vocational expert during the hearing, and the ALJ's review of the record. (R. at 16-17.) The ALJ found that Plaintiff could perform her past work because that job does not require work-related activities that are incompatible with her residual functional capacity. (R. at 17.) In making this conclusion the ALJ cited both DOT descriptions and the vocational expert's testimony. (R. at 16-17.) Plaintiff worked as a retail salesclerk, security worker, and store manager. (R. at 16.) All positions are considered light work under DOT descriptions. (R. at 17-18.) The ALJ then compared the descriptions, Plaintiff's testimony, the vocational expert's testimony and Plaintiff's residual functional capacity. (R. at 17-18.) The ALJ concluded that Plaintiff could perform her relevant past work with her residual functional capacity, and further could perform other jobs in the economy. (R. at 17-18.)

Pursuant to SSR 82-62, 1982 SSR LEXIS 27, the "claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining skill level, exertional demands, and nonexertional demands of such work." Here, Plaintiff spoke about her past work. She described her past work (team lead for MJ

Soffe) (R. at 45.) Further, Plaintiff submitted her past employment and it was added to the record. (R. at 187.)

At the hearing, the vocational expert, after listening to Plaintiff's testimony and reviewing the exhibits, stated Plaintiff's past work was best described in DOT titles 279.357-054, 372.667-034, 185.167-046, 279.357-054. (R. at 45.) The ALJ asked the vocational expert a hypothetical where the individual "could frequently lift and carry 25 pounds, occasionally lift and carry 50 pounds; sit for about six hours in a day; stand for about six hours in a day; walk for about six hours a day. . . push or pull at . . . the medium exertional level; frequently climb stairs or ramps. . . ." (R. at 45-46.) The vocational expert responded that the hypothetical individual would be able to perform her past work. (R. at 46.)

Plaintiff's prior jobs were all positions that only required light exertional effort. (R. at 45.) The ALJ determined that Plaintiff had the residual functional capacity for medium level work with the additional limitations articulated above. (R. at 14, *supra* § E.) Therefore, as Plaintiff could work at a higher level of exertion, the ALJ's determination that Plaintiff could perform her prior work is supported by substantial evidence.

## V.  CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 24) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record, mail a copy to Plaintiff's address on record, and forward a copy to United States District Judge M. Hannah Lauck.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
_____
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: January 25, 2022